[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 3, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-13273
Non-Argument Calendar
_____

D. C. Docket No. 05-00570-CV-ORL-18-KRS

THOMAS GEORGE HYLAND,

Plaintiff-Appellant,

versus

JACK PARKER,
Sheriff, Brevard County,
LISA S. PATRICK,
Major,
PATRICIA TIPTON,
Sergeant,
CHARMAINE C. REPASS,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 3, 2006)

Before TJOFLAT, BIRCH and CARNES, Circuit Judges.

PER CURIAM:

Thomas George Hyland appeals the district court's sua sponte dismissal of his in forma pauperis ("IFP") and pro se 42 U.S.C. § 1983 complaint alleging the violation of his constitutional right of access to courts. After Hyland had amended his complaint, but before the defendants had been served, the district court sua sponte dismissed Hyland's amended complaint as frivolous under both 28 U.S.C. §§ 1915A(b) and 1915(e). Finding that the district court's decision to dismiss the complaint was erroneous and an abuse of discretion, we VACATE and REMAND for further proceedings consistent with this opinion.

## I. BACKGROUND

On 18 April 2005, Hyland submitted his initial civil rights complaint to the United States District Court for the Middle District of Florida, along with a request for leave to proceed in forma pauperis ("IFP"). He named four officials as defendants: Sheriff Jack Parker, Sheriff of Brevard County, Florida, who he alleged ran the Brevard County Detention Center ("center") and provided for and approved the center's policy and procedures; Major Lisa S. Patrick, who he alleged was responsible for the day to day operations of the center, including the policies and procedures of the Legal Materials Department ("legal department"); Sergeant

2

Patricia Tipton, who he alleged was the supervisor of the legal department; and

Charmane C. Repass, who he alleged was the clerk of the legal department.

Hyland alleged that he was transferred to the center on 20 March 2005. He

further alleged that, at that time, he was a pro se party in four different legal

actions: three civil suits before the United States District Court for the Southern

District of Florida, and one before the Florida Third District Court of Appeal. The

day after Hyland arrived at the center, he started working on these cases and began

making requests of the authorities there.

In his complaint, Hyland stated that the center was denying him access to the

courts in four ways: (1) by refusing him pens, paper, and postage, which he needed

for change of address notices and appeals in the four lawsuits to which he was a

party; (2) by refusing to give him any legal research materials to work from on his

four pending cases; (3) by refusing to give him the addresses of the courts,

attorneys, and legal organizations necessary to participate in his pending cases; and

(4) by maintaining the legal department only as a "cite/demand" resource, instead

of as a law library.[1]

After the center informed him that he had exhausted the process of

grievances and appeals, Hyland, in his initial district court complaint, described the

---

[1] Hyland explained in his complaint that these "materials [were] only [made] available to [him] strictly relating to [this] complaint presently." R1-1 at 13.

four cases, including their current status and necessary filings, and the resultant injuries suffered by his lack of access to materials and research. Specifically, in his first case, he expected an order on a defendant's motion to dismiss, which he would not receive if he could not change his address. Therefore, he would not be able to go on to discovery or appeal regardless of the order's content. In his second case, he needed to be able to study the rules of appellate procedure in order to file a brief with our circuit, and he faced forfeiture if he could not meet the deadlines. In his third case, he needed to be able to communicate with the court regarding a stipulated agreement, which he could not do without the requested resources.

Finally, Hyland alleged that, in his fourth case, before the Florida Third District Court of Appeal, he had already missed his deadline to supplement his initial brief with the transcripts of the hearing because he had not been allowed to contact the court reporter to get the transcripts and he had not been allowed to contact the court. He was also prevented from researching the law governing his case. Further, he contended that the Attorney General of the State of Florida would be sending him a copy of his response brief, but it would go to the wrong address because he had not been allowed the necessary pens, paper, and postage to communicate with the state.

4

Hyland explained that two of the federal cases were civil rights actions, and all four were related to the appeal before the Florida court. Hyland sought immediate injunctive relief in the form of an order that the defendants immediately "supply [him] with his needs of pro se indigent legal supplies" and allow him to work on his four cases with full access to the department's resources, including legal addresses. R1-1 at 19-20. He also sought monetary damages.

On 25 April 2005, the district court denied one of Hyland's motions, in which he sought a temporary restraining order, explaining that Hyland had neither complied with the applicable rules regarding such a filing, nor had he "convinced the [c]ourt that there is a substantial likelihood that he will prevail on the merits" or "that there exists a substantial threat that he will suffer irreparable injury." R1-8 at 2. That same day, the district court entered an order stating that because Hyland had "failed to set forth his claim adequately, he [would] be required to submit an amended complaint." R1-9 at 1. The order went on to describe how Hyland should, among other things: (1) only name defendants who were responsible for alleged constitutional violations; (2) state what rights had been violated and support his claims with facts; (3) "describe how each named defendant [was] involved in the alleged constitutional violation(s)"; (4) "show specifically how he ha[d] been damaged"; (5) comply with 42 U.S.C. § 1997e(a) and (e) as to

5

exhaustion of administrative remedies; and (6) "[m]ost importantly, if [he] intends to allege a <u>number</u> of <u>related</u> claims, then he must set forth each claim in a separate paragraph in the same complaint. However, if the claims are <u>not</u> <u>related</u> to the same basic issue or incident, then each claim must be addressed in a separate complaint." <u>Id.</u> at 1-3. (emphasis in original).

One day later, Hyland filed a motion to compel, asking the district court to order the department to allow him access to a copy of the Local Rules for the United States District Court for the Middle District of Florida. Hyland explained that the district court had designated the present case a "Track One" case under Local Rule 3.05 and notified him that he needed to comply with that rule. R1-11 at 1. He further explained that when he asked the department for a copy of the Local Rules, Repass responded that they were unavailable. Hyland argued that Repass could access the rules on Westlaw, and asserted that she knew that he required access to the rule to comply with the court order. Thus, he asked the district court to order the defendants to supply him with a copy of the Local Rules.

The next day, the district court denied Hyland's motion, explaining that "[a]t this juncture of the proceedings, no [d]efendant has been served with process in this case, and, since [p]laintiff will be filing an amended complaint . . . it is not clear that the Brevard County Detention Center will be a party to this litigation.

Thus, it would be inappropriate for the Court to grant the motion." R1-12 at 1.

On 4 May 2005, Hyland filed a pro se amended complaint. While Hyland simply reproduced much of the peripheral matter from the original complaint, the amended complaint did include some important changes. First, Hyland added a few more words describing how the named defendants represented the chain of authority over the legal department's policies and procedures. Second, he reduced the number of claims in his complaint from four to one, stating in full that:

> Defendants are violating plaintiff's Constitutional Right of 'Access to Courts' under the Due Process Clause of the 5th Amendment to the U.S. Constitution; and the Due Process and Equal Protection guarantees of the 14th Amendment–Effectively Foreclosing Access–by and through completely denying him access to [the department] for pending actions and appeals in other Federal and Florida jurisdictions; (other than Brevard County) on which Plaintiff is Court Ordered pro se.

R1-14 at 8, A-1. This is essentially the second claim stated in his initial complaint.

Hyland rewrote his statement of facts to include the facts relevant only to this one issue. These facts were essentially the same as those related in the first complaint, with a few changes. He alleged in the amended complaint that when he made his request for research materials he "specifically designated that the materials were for [his] civil rights actions in the Southern District and his direct appeal in the [Florida Third District Court of Appeal]." R1-14 at 9a. Further, Hyland stated that when Repass denied his first request for the materials she

"grounded [the decision] on her 'following policy and procedures set forth for [the department].'" Id. at 9b. He alleged that when he filed a grievance on this issue he stated "the specific case numbers that could be verified, and highlighted the fact that he needed the requested legal reference materials as the cases had briefing schedules, deadlines, and specific time frames he must meet." Id. The statement of facts concluded by describing how the center ultimately notified him that they would not respond to any more grievances regarding the legal department.

As to his injury, the most significant change in the amended complaint was that Hyland only discussed three cases, failing to mention the case listed third in his original complaint. Hyland alleged that the defendants' actions had already resulted in the dismissal of a civil rights case before our court because he had been unable to do research to continue the action. Further, in another civil rights case before the district court, he had not been able to participate in discovery or actively prosecute the case. Finally, Hyland alleged that in his Florida state court direct appeal, he had missed the deadline to supplement his initial brief because of the defendants' actions and would not be able to file a reply brief without doing further research.

As for relief, the amended complaint did not explicitly seek injunctive relief, but rather an order that defendants "immediately recognize [Hyland's] pro se

8

ordered cases . . . and allow [him] full access to [the department] on these cases."

Id. at 10. He also restated his request for monetary damages. Along with the amended complaint, Hyland filed a motion for reconsideration of his previously filed motions, including his request for leave to proceed IFP.

On 10 May 2005, the district court entered an order denying reconsideration of its earlier order and dismissing Hyland's complaint as frivolous under 28 U.S.C. §§ 1915A(b) and 1915(e). The court first found that Hyland's complaint did not involve a denial of either "an adequate law library or adequate legal assistance," but rather involved "a denial of access to the prison law library." R1-15 at 2 n.1. As a result, the court found that it had to "determine whether [Hyland] has alleged an actual injury to court access." Id. "For example, [Hyland] must provide evidence 'such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials." Id. at 3. The court found that Hyland had "alleged no specific facts sufficient to raise an arguable basis for a finding that he has suffered such prejudice as a result of [d]efendants' allegedly improper conduct." Id. Although the court suggested that a plaintiff's allegations of "dates missed, [an] inability to make timely filings, or [the] loss of a case which could have been won" would be nonfrivolous, it apparently concluded that Hyland had not made such allegations, because it found that his "allegations with regard to

9

the denial of access to the courts [were] insufficient to withstand scrutiny under [s]ections 1915A(b) and [1915(e)]. [Hyland] simply does not state a claim for denial of access to the courts, and this case must be dismissed as frivolous."  Id.

Also on 10 May 2005, Hyland filed a notice of change of address with the court, stating that he had moved to the Central Florida Reception Center.  On 17 May 2005, Hyland filed a second motion for reconsideration/rehearing, this time regarding the May 10 dismissal.  He responded to the court's findings, arguing that his complaint "does state thoroughly certain facts establishing specific prejudice." R1-17 at 2.  He argued that the complaint showed an "absolute deprivation of access to all legal materials (law library)."  Id.  He asserted that he demonstrated actual harm by showing that his case on appeal to our circuit had been dismissed, and that he had been unable to supplement an initial brief or file a reply brief in his Florida direct appeal.  He further argued that his case was not frivolous because "[t]he defendants are not immune from suit, a legal interest–access to Courts[–]certainly exists, [and] the facts alleged are clearly not baseless, fanciful, or irrational in the least."  Id. at 3.  On this basis, Hyland asked the court to reconsider its dismissal of his complaint.

On 19 May 2005, in an order with no memorandum, the district court denied Hyland's motion for reconsideration.  On 9 June 2005, Hyland filed his notice of

10

appeal as to the order of dismissal and the order denying reconsideration of the May 10 dismissal. We subsequently entered an order finding that the appeal was not frivolous and allowed Hyland to proceed.

## II. DISCUSSION

We review a district court's sua sponte dismissal of a claim as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i) for abuse of discretion. Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001). "[B]ecause district judges remain more familiar with and are more experienced to recognize potentially frivolous claims . . . [a] determination of frivolity is best left to the district court." Id.

We have not announced a standard of review for a district court's sua sponte dismissal of a claim as frivolous under 28 U.S.C. § 1915A(b)(1), the other provision cited in the instant order. Other circuits are split on the issue. Compare Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004) (applying de novo review), with Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam) (applying abuse of discretion). The reasons underlying our standard of review for § 1915(e)(2)(B)(i) persuade us that abuse of discretion is the correct standard for § 1915A(b)(1) as well. See Bilal, 251 F.3d at 1349. Nevertheless, any uncertainty is immaterial as Hyland succeeds under either the abuse of discretion standard or de novo review.

11

Under 28 U.S.C. § 1915(e)(2), the district court must dismiss the complaint of a plaintiff proceeding IFP if "the court determines that . . . (B) the action or appeal–(i) is frivolous or malicious."  Similarly, under 28 U.S.C. § 1915A(b)(1), the court must dismiss a prisoner's complaint if it is "frivolous [or]  malicious."

In defining frivolity, we have said that "[a] claim is frivolous if it is without arguable merit either in law or fact."    Bilal, 251 F.3d at 1349.  We have also stated that a case is frivolous when it appears that the plaintiff has little or no chance of success, i.e., when the complaint on its face makes clearly baseless allegations or relies on legal theories that are indisputably meritless.  See Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993) (per curiam) (citing Neitzke v. Williams, 490 U.S. 319, 327 109 S. Ct. 1827, 1832 (1989); Denton v. Hernandez, 504 U.S. 25, 31-34, 112 S. Ct. 1728, 1733-34 (1992)).  In this case, a determination of frivolity turns on the law regarding Hyland's constitutional right to access to the courts.

Prisoners have a right to access to the courts under the Fourteenth Amendment.  Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1998) (citing Bounds v. Smith, 430 U.S. 817, 828, 97 S. Ct. 1491, 1498 (1977)).  To the extent that prisoners have a right of access to a law library, this right is dependent on their right to access to the courts.  Id. (citing Lewis v. Casey, 518 U.S. 343, 349-351,

12

116 S. Ct. 2174, 2179-80 (1996)).  In this attenuated setting, prisoners must do more than show interference with their right to a law library; they must also show actual harm.  Lewis, 518 U.S. at 351, 116 S. Ct. at 2180 ("[T]he inmate[s] therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered [their] efforts to pursue a legal claim.").  Further, only specific types of legal claims are protected by this right, namely, the nonfrivolous prosecution of either a direct appeal of a conviction, a habeas petition, or a civil rights suit.  Bass v. Singletary, 143 F.3d 1442, 1445 (11th Cir. 1998).

A prisoner's standing in these cases requires showing an actual injury to the prosecution of one of these actions.  Id. (citing Lewis, 518 U.S. at 349-350, 116 S. Ct. at 2179).  The Supreme Court has explained that "each element [of standing] must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation.  At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim."  Lewis, 518 U.S. at 358, 116 S. Ct. at 2183 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136-37 (1992)).

13

We have, in contrasting a case analyzed sua sponte for frivolity with one analyzed on summary judgment, explained that the plaintiff would survive the frivolity analysis if his "allegation[s] sufficiently asserted" actual harm to a qualified legal action. Bass, 143 F.3d at 1445. We explained that, in such a situation, the district court could not dismiss an "access-to-courts claim based upon a failure to allege actual injury." Id. (citing Lewis, 518 U.S. at 352-57, 116 S. Ct. at 2181-82). Nevertheless, we rejected claims of a violated right to access because, on summary judgment, the plaintiffs had presented no evidence of any harm, and had only made incomplete allegations. See id. at 1446.

In his amended complaint, Hyland alleged that a federal civil rights action that he was prosecuting had been dismissed on appeal and that he had missed a deadline in his Florida direct criminal appeal due to the defendants' refusal to allow him access to necessary legal materials. Taking these allegations as true, Hyland has demonstrated actual harm to a qualified legal action, and he should be allowed the opportunity to present evidence. Moreover, Hyland's claims do not lack arguable merit, are not clearly baseless, do not rely on an indisputably meritless legal theory, or otherwise suggest that he has little or no chance of success. Thus, these allegations are sufficient to survive frivolity analysis under sections 1915(e)(2)(B)(i) and 1915A(b)(1).

### III. CONCLUSION

Upon careful review of the pleadings and district court orders and upon consideration of Hyland's brief, we find that the decision to dismiss Hyland's amended complaint as frivolous was erroneous and an abuse of discretion. For the above reasons, we vacate the district court's order and remand the matter for further proceedings. Hyland's objection to the district court's denial of his motion for reconsideration is therefore moot. **VACATED AND REMANDED**.